On January 17, 1931, petitions were filed with the county board of education of Miller County, signed by 2,858 persons purporting to be qualified electors of the territory affected, asking that the boundaries of Texarkana Special School District be so changed and extended as to bring within the boundaries of said district all of the territory comprising and constituting Consolidated School District No. 2, Rural Special School District No. 19, and Common School District No. 12. On the same day a remonstrance to the petitions was filed with the board, and on that date by consent of all parties the matter was passed until January 24, 1931. On that day, at the request of the petitioners, the board passed said matter and set it for hearing and trial for the 7th day of March, 1931. The notices required by law to be given in such proceedings were first posted on the 29th day of January, 1931. It is conceded that the notices were in proper form and posted in the manner required by law.
On appeal to the circuit court from the order of the county board of education granting the prayer of petitioners, the petition was dismissed, and the order of the court directed to be certified to the county board of education to the end that the order of consolidation theretofore entered by it be set aside and annulled. On appeal to this court, there is but a single question presented: was the notice posted within apt time? It is the contention of the appellants that the notice required can be given either before or after the filing of the petition, while the appellees urge, and the circuit court found, that the notice must be posted before the filing of the petition asking for the consolidation.
The law making provision for the giving of notice is found in 8821 of Crawford Moses' Digest, and is as *Page 215 
follows: "When a change is proposed in any school district, notice shall be given by parties proposing the change by putting up handbills in four or more conspicuous places in each district to be affected, one of said notices to be placed on the public school building in each affected district. All of said notices to be posted thirty days before the convening of the court to which they propose to present their petition. Said notices shall give a geographical description of the proposed change."
This statute was written at a time when the jurisdiction relating to the dissolution or change of boundaries of school districts lay in the county court. The act creating the county board of education changed the tribunal authorized to act and not the method of procedure. Therefore, the requirements of the notice remain now as before, the only difference being that "county board of education" is to be substituted for "court." Mitchell v. Directors School Dist., 153 Ark. 50, 239 S.W. 371.
It is insisted by the appellants that this court has virtually construed 8821, supra, in conformity with their view. They cite Rural Special School District No. 11 v. Baker, 144 Ark. 397, 222 S.W. 732; Acree v. Patterson,153 Ark. 188, 240 S.W. 33; Nathan Special School Dist. No. 4 v. Bullock Springs Special School District No. 36, 183 Ark. 706, 38 S.W.2d 19, and Priest v. Moore, 183 Ark. 999, 39 S.W.2d 710; and call attention to the facts of those cases by which it appears that the notice was given after the filing of the petition, and they argue that, since each of these cases held that the notice was sufficient and properly given, the question in the case at bar was settled by the court according to their contention now made. On the contrary, the appellees take the position that the question was settled according to their view in the case of Lewis v. Young,116 Ark. 291, 171 S.W. 1197. A careful review of these cases and the points therein decided does not sustain either the appellees or the appellants in their respective views.
The point for decision in the case of Rural Special School District v. Baker, supra, was the sufficiency of *Page 216 
the petition, and the question of the time in which the notice should be filed was not involved. So, in Mitchell v. Directors, etc., supra, there was no question before the court as to the time when notice should be given. In that case the court merely held that the section requiring notice to be given was not repealed by subsequent legislation, and that the notice required was jurisdictional. In Acree v. Patterson, supra, practically the same question relating to the notice was before the court as in the Mitchell case. In Nathan Special School District v. Bullock Springs Special School District, supra, the sufficiency of the notice was questioned merely on the ground that it was signed by four only of those who had signed the petition, the contention being that the notice to meet the requirements of the law should have been signed by all of the petitioners. In Priest v. Moore, supra, the question of notice did not arise at all, the court in that case merely holding that more than one petition on the question of consolidation of school districts might be circulated, and the county board of education might hear them together, and it was within the sound discretion of the board to determine matters necessary to the formation or consolidation of school districts, and its order is subject to review only when arbitrary or unreasonable.
These are the decisions relied upon by the appellants, and it will be observed that in none of them was the point presented which is now before us.
The case of Lewis v. Young, supra, was an appeal from the order of the circuit court sustaining that of the county court creating a new district from portions of the territory of two districts, No. 3 and No. 64. The notice prescribed by the statute was posted in District No. 3, but there was no notice posted in District No. 64, but all of the electors in District No. 64 signed the petition. The question was, did the fact that all of the electors of District No. 64 signed the petition give the court jurisdiction to take a part of the territory embraced in that district and transfer it to another district, although no notice had been posted as required by the statute? The *Page 217 
court held that the giving of the notice was a prerequisite to the exercise of jurisdiction by the county court and must be given, even when all of the electors had signed the petition.
We have been unable to find any case where we have been called to pass upon the question we are now asked to decide. Therefore, none of the cases cited are controlling in the instant case, and we are remitted to the statutes providing for the change, dissolution or consolidation of school districts for a determination of the proposition now involved. Section 8821 of the Digest was a part of the act of April 8, 1891, which provided that "the boundaries of school districts in counties shall be and remain as now established except that [the] county court shall have power to alter the same whenever a majority of the citizens residing therein shall petition the court so to do; but in all changes due regard shall be had to the convenience of the citizens and all the territory in the county shall be embraced in said school districts."
By act of April 1, 1895, the county courts were given power to dissolve any school district and attach the territory of the same in whole or in part to an adjoining district or districts "whenever a majority of the electors residing in such district shall petition the court so to do." In the following section of the act it was provided that, "when such dissolution is proposed, notice shall be given by those proposing the same by posters in four public places in the district, said notices to be posted thirty days before the meeting of the term of the court at which such petition is proposed to be presented."
The act of March 11, 1919, conferred upon county boards of education (8823, Crawford Moses' Digest) the right to form new school districts or to change the boundaries thereof upon a petition of a majority of all of the electors residing upon the territory of the districts to be divided. At the 1927 session of the General Assembly act No. 156 was enacted amending 8823, supra, and providing that, "upon a petition being filed with the *Page 218 
county board of education signed by a majority of the qualified electors in the territory to be affected, said county board of education of any county within the State of Arkansas shall have the right to form new school districts and to change the boundary lines between any school district heretofore formed where, in the judgment of such board of education, it would be for the best interest of all parties affected, provided, however, that no change shall be made that would impair any outstanding indebtedness of any school district now formed."
The only requirements for notice are those provided for in the act of April 8, 1891 (8821) and in the act of April 1, 1895 (8870) which have been quoted above. It is pointed out by the appellants that in neither of the sections requiring the giving of notice is there any provision for giving or posting the notice prior to the filing of the petition, and it is contended that, since the giving of the notice is jurisdictional, if the Legislature intended the notice to be given prior in point of time to the circulation and filing of the petition, it would have so stated in plain words, and, because this was not done, it must he presumed that no such requirement was intended. It will be observed, however, that in none of the legislation providing for dissolution, change or consolidation of school districts is there any time mentioned at or in which the petition shall be filed in the court or before the board, or any specific provision made regarding the time in which the petitions should be circulated for the signatures of the electors. In order, therefore, to determine the meaning of the provisions of the law requiring the posting of the notice, the fact that no specific time is fixed for the circulation and filing of the petition becomes important when the purposes for which a notice is given are considered.
The effect of our decision in Williams v. Citizens,40 Ark. 290, and McCulloch v. Blackwell, 51 Ark. 164,10 S.W. 259, is that the signing of petitions, such as the one in the instant case, is in the nature of an election and equivalent to a vote cast which, after the filing of the *Page 219 
petition, becomes irrevocable except for deception and fraud. Nathan Sp. School Dist. v. Bullock Springs Sp. School Dist., supra. In that case we said: "The only purpose the notice serves is to inform those interested of the nature and effect of the proceeding and the date upon which it would be submitted for hearing." The persons interested are not only those who reside in the territory affected, but those who might reside elsewhere and own property within the affected territory whose interest may be even greater than many of the electors who actually live therein. Of course, all those who have children are interested and all persons, whether electors or not, who reside within the territory affected.
In the case of Lewis v. Young, supra, after having held that the notice prescribed by the statute was a prerequisite to the exercise of jurisdiction, the court said:
"This principle of law is recognized by counsel for appellee, but they contend that it is not applicable under the facts in the present case because all of the electors residing in District No. 64 signed the petition and to have given notice would, they say, have been a useless thing. But it may be that property owners within District No. 64 did not reside within the district, and therefore did not sign the petition. They were interested in the question as to whether or not a school district in which their property was situated should be dismembered, and for that reason notice should have been given, so that, in the event they saw fit to do so, they might have used whatever influence they might have had with their tenants and other electors residing within the district to cause them not to sign the petition."
It appears from this language that the court attached great importance to the right of those interested to prevent, if they saw fit and could do so, the signing of the petition by those with whom they might have influence, and, of course, they would be deprived of this right if the petition had been signed and filed before they had notice that such would be circulated; and, as the filing of the petition concludes the right of withdrawal *Page 220 
by the signer except for fraud, his vote would have become irrevocable, and the notice would be useless for the purpose indicated in the case last cited. Also, as the board had discretion to deny the prayer, of the petition, although a majority might have signed it, the notice of the date upon which it would be submitted would also be important.
The question presented is one which we find difficulty in answering, but we have concluded that, since the statutes are silent as to the date on which the petition should be filed, the better view is that the Legislature intended that it be not filed before its presentation, and the words "present their petition" were equivalent to the words "filing their petition." It is argued that the language of the act regarding notice is ambiguous, but we think, when the statute of 1891 is considered as a whole, there is an ambiguity which requires construction, and that we must read the section applicable to the notice in the light of the section preceding. State v. Hanna,131 Ark. 129, 198 S.W. 881; Rayder v. Warrick, 133 Ark. 491,202 S.W. 831; Gardner v. Hughes, 136 Ark. 332,206 S.W. 678.
The decisions of this court in the cases of Williams v. Citizen and McCulloch v. Blackwell, supra, had been rendered prior to the passage of the act of 1891, and the Legislature, in passing this act, is presumed to have known these decisions, and that the act of signing the petition after the same was filed was irrevocable, and that they acted in the light of those decisions. Rhodes v. Cannon,112 Ark. 6, 164 S.W. 752; Merchants' T. W. Co. v. Gates, 180 Ark. 96, 21 S.W.2d 406, and intended that the petition be filed as of the date of its presentation and the notice be given thirty days before.
It is argued by the appellants with much force that, since the statement of facts in the cases cited and relied on by them show that the notice was published after the filing of the petition, those decisions inferentially held that the notices with respect to the time limit and the *Page 221 
relation they bore to the filing of the petition were sufficient. But, as we have seen, the point in issue here was not before the court in those cases and was not considered or decided. "It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which these expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles, which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." Marbury v. Madison, 1 Cranch 137, cited with approval in Cooper v. Freeman Lumber Co., 61 Ark. 36, 31 S.W. 981, 32 S.W. 494.
Affirmed.